T.C. Memo. 2004-5


UNITED STATES TAX COURT


LIFE CARE COMMUNITIES OF AMERICA, LTD., A FLORIDA LIMITED
PARTNERSHIP, ROBERT W. MCMICHAEL, A PARTNER OTHER THAN THE TAX
MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21683-94.            Filed January 5, 2004.


<u>B. Gray Gibbs</u>, for petitioner.

<u>Francis Mucciolo</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  By Notice of Final Partnership Administrative
Adjustment (FPAA) dated August 8, 1994, respondent determined
that the purchase and sale of partnership interests between
partners Robert McMichael (petitioner), Hudson Fowler, and
Raymond Smith were effective on June 30, 1990, rather than on
January 13, 1989, and the correct distributive shares of

partnership income, loss, deductions, and credits were determined based on their ownership percentages in accordance with section 706.[1]  After concessions, the sole issue for decision is whether petitioner was divested of his ownership interest in Life Care Communities of America, Ltd., on January 12, 1989, or June 30, 1990.

                          FINDINGS OF FACT

     In October 1981, petitioner, Hudson D. Fowler, Jr. (Fowler), and Raymond N. Smith (Smith) formed FMS Properties, Inc., a Florida corporation (FMS), which developed a life care retirement center (retirement center).  FMS became the sole general partner of FMS Properties, Ltd., a limited partnership (partnership), formed in December 1981.  In January 1982, the partnership's name was changed from FMS Properties, Ltd. to Life Care Communities of America, Ltd.  Other entities created by petitioner, Smith, and Fowler, included Bentley Village, Inc., a Florida not-for-profit corporation (Bentley Village), and Life Care Communities Management Corporation, a Florida business corporation (management company).  In the aggregate, FMS, the partnership, Bentley Village and the management company, directly and indirectly, owned and operated the retirement center.  Bentley

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Village ran the daily operations and the management company provided sales and management services. Petitioner was managing partner of the partnership, president of FMS, vice president of the management company, and president of Bentley Village.

In July 1985, Smith and Fowler used their combined voting power to remove petitioner from his managerial positions and exclude him from all further business activities. In addition, Smith and Fowler transferred the contracts held by the management company to Constellation Services, Inc., an entity controlled by Smith and Fowler. In response, in 1987, petitioner filed a lawsuit, against Smith and Fowler alleging civil theft, conversion of assets, and embezzlement.

The lawsuit settled pursuant to an agreement, dated January 12, 1989 (1989 agreement). As part of the 1989 agreement, petitioner received $200,000. During settlement negotiations, the parties agreed that petitioner would either sell his interest to Smith and Fowler or purchase Smith and Fowler's interests. To effect the change in ownership of the partnership and the other entities, the 1989 agreement provided the following options: (1) Petitioner had until September 30, 1989, to purchase Smith and Fowler's interests for $8 million (i.e., $4 million each); (2) Smith and Fowler could, prior to September 30, 1989, terminate petitioner's option by purchasing petitioner's interest for $4 million; or (3) if petitioner did not exercise his option to

purchase Smith and Fowler's interests prior to September 30, 1989, Smith and Fowler would be obligated to purchase petitioner's interest for $2,370,000. By letter dated November 16, 1989, Smith and Fowler informed petitioner that they would purchase his interest pursuant to the 1989 agreement. No provision in the 1989 agreement, however, precluded petitioner after January 12, 1989, from participating in the affairs of the partnership.

On June 30, 1990, petitioner, Smith, and Fowler executed a purchase agreement (1990 agreement) providing for the transfer of petitioner's interest to Smith and Fowler for $2,570,000. The 1990 agreement recharacterized the $200,000 paid pursuant to the 1989 agreement as part of the purchase price. The parties executed a $2 million promissory note with the balance of the purchase price (i.e., approximately $370,000) to be paid at closing.

In 1990, petitioner sought a distribution to cover his 1989 tax liabilities relating to his distributive share of partnership income. Prior to 1989, the only distributions made to petitioner, Smith, and Fowler were to assist them in paying their tax obligations resulting from their distributive shares of partnership income. In 1989 and 1990, however, the partnership used most of its income to make payments relating to its receipt of a $20 million loan and made no distributions.

On April 18, 1990, petitioner was released from liability relating to the loan. On October 11, 1990, Smith and Fowler filed with the Florida Department of State a Certificate of Amendment To Limited Partnership removing petitioner as general and limited partner.

The partnership issued petitioner Schedules K-1 (Form 1065, Partner's Share of Income, Credits, Deductions, Etc.), which reflected petitioner's distributive share of partnership items, relating to 1989 and 1990. Petitioner, however, excluded such items after January 12, 1989, from his Federal income tax returns for those years. On June 27, 1994, respondent sent an FPAA, relating to 1989 and 1990, to Smith as tax matters partner of the partnership. Smith did not file a petition for readjustment of partnership items pursuant to section 6226(a). On August 8, 1994, respondent sent an FPAA, relating to 1989 and 1990, to petitioner, which determined that petitioner transferred ownership in the partnership on June 30, 1990, rather than January 12, 1989, and that he was, therefore, a partner whose distributive share included partnership income accrued through June 30, 1990.

Respondent also determined that petitioner was liable for the income tax accrued through June 30, 1990, on his pro rata share of FMS and the management company's income. Following respondent's determination, petitioner paid the income taxes

relating to FMS and the management company and filed a refund suit in the United States District Court for the Middle District of Florida. On June 10, 1998, the District Court entered a judgment against petitioner and determined that petitioner transferred his shares in FMS and the management company to Smith and Fowler on June 30, 1990. On November 16, 1999, the Court of Appeals for the Eleventh Circuit affirmed the District Court's judgment.

At the time the petition was filed, the partnership maintained its principal place of business in Naples, Florida.

OPINION

Petitioner contends that on January 12, 1989, the 1989 agreement divested him of his partnership interest.[2] Respondent contends that petitioner was not divested of his interest until June 30, 1990, the date of the purchase agreement. We agree with respondent.

In 1986, Smith and Fowler voted to remove petitioner from his management position. In 1987, petitioner filed a lawsuit for damages and ultimately reached a settlement with Smith and Fowler. The 1989 agreement provided a number of options to effect the change in ownership of the partnership. Petitioner's

---

[2] Sec. 7491 is inapplicable because the examination of petitioner's returns began before the statute's effective date. Thus, petitioner bears the burden of proof on all questions of fact. Rule 142(a); Monahan v. Commissioner, 109 T.C. 235, 236 (1997).

interest was not transferred on January 12, 1989. In fact, on that date the parties had not yet decided which option would be exercised. There is insufficient evidence to alter our construction of the unambiguous terms of the agreement.

In the alternative, petitioner contends that he did not receive any distributions after January 12, 1989, and, therefore, any allocation to him of partnership income accrued after that date lacks substantial economic effect. We disagree.

The substantial economic effect requirement involves a two-part analysis: the allocation must be found to have economic effect, and such economic effect must be substantial. Sec. 1.704-1(b)(2)(i), Income Tax Regs. In order for an allocation to have economic effect, it must be consistent with the underlying economic arrangement of the partners. Sec. 1.704-1(b)(2)(ii)(a), Income Tax Regs. Although the partnership did not make any actual distributions to petitioner, Smith, or Fowler in 1989 and 1990, its income was used to make payments relating to the $20 million loan. Pursuant to section 752(b), the partnership is deemed to have made distributions to all partners liable for such loan. Sec. 752(b); sec. 1.702-1(a), Income Tax Regs.; United States v. Basye, 410 U.S. 441, 453 (1973). In 1989, all of the partners were liable for the loan, and petitioner was liable for the loan until at least April of 1990. Thus, in 1989 and 1990 petitioner received an economic benefit consistent with the

underlying economic arrangement of the partners.  Sec. 1.704-1(b)(5), <u>Example</u> (<u>4</u>)(<u>ii</u>), Income Tax Regs.  Petitioner failed to address whether or not the economic effect of the allocation was substantial.  Consequently, we conclude that petitioner has failed to establish that the economic effect of the allocation was not substantial.  Accordingly, we sustain respondent's determination.

Contentions we have not addressed are irrelevant, moot, or meritless.

<u>Decision will be entered under Rule 155</u>.